RECEIVED

JUL 2 2 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **STEPHEN KEITH SMITH** | **CIVIL ACTION NO.: 09-1579** |
| **VERSUS** | **JUDGE HAIK** |
| **CIGNA GROUP INSURANCE (LIFE INSURANCE COMPANY OF NORTH AMERICA)** | **MAGISTRATE JUDGE HILL** |

## REASONS FOR JUDGMENT

Before the Court is Plaintiff's Motion for Partial Summary Judgment [Doc. 9] and Defendant's Cross Motion for Partial Summary Judgment [Doc. 17].

### A. Facts

This lawsuit was removed from the state court on the basis of preemption by the Employee Retirement Income Security Act (ERISA). Stephanie Ann Laborde Smith died at her home on August 28, 2008. Initially, the Lafayette Parish Coroner's Office deemed the death a suicide as a result of multiple drug use. Subsequently, the coroner changed the cause of death to "unknown." When the paramedics arrived at the Smith's home, pills were found in Mrs. Smith's mouth and scattered on the bedroom floor. The toxicology report revealed that Mrs. Smith's blood tested positive for eight different prescription drugs. Also, abundant white granular sediment was found in Mrs. Smith's stomach during her autopsy. Accordingly, there is conflicting evidence of whether Mrs. Smith's death was accidental or suicide.

At the time of Mrs. Smith's death, the decedent had in full force and effect an insurance policy, Policy Number OK980004 issued by Life Insurance Company of North America (LINA). The state of issue listed on Mrs. Smith's insurance policy was Texas. On August 27, 2008 after

review of the submitted Proof of Loss Claim Form, Death Certificate, and Group Accidental Death Policy Number: OK980004, LINA determined that Mrs. Smith's death was not a covered loss under the policy. In LINA's letter to Mr. Smith, it states that she was denied benefits based on the following exclusions:

1. Intentionally self-inflicted injury, suicide or any attempt threat while sane or insane;

2. Commission or attempt to commit a felony or an assault;

4. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except any bacterial resulting from an accidental cut or wound or accidental ingestion of contaminated food.

6. Voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of Physician and taken in accordance with the prescribed dosage.

In the first denial letter LINA also stated that, "Based on the information received with this claim, Mrs. Smith was under medical treatment for depression and she died as a result of her voluntary ingestion of medications above the prescribed dosage and which appear to have been taken in an attempt to commit suicide." The Plaintiff appealed that finding and was again denied the benefits by LINA. On May 5, 2009, LINA issued another denial later based on the Plaintiff's appeal. In that letter, LINA cited the following exclusions:

6. Voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of Physician and taken in accordance with the prescribed dosage.

Plaintiff has filed this Motion for Partial Summary Judgment asking the Court to find

that Louisiana's presumption against suicide preempts ERISA guidelines in this case. In response, Defendant filed a Cross Motion for Partial Summary Judgment arguing that Louisiana's presumption against suicide does not apply and cannot apply to LINA's benefit determination in this matter because the final determination was based upon exclusions that do not involve suicide.

**B.     Plaintiff's Contentions**

Plaintiff bases his Motion for Partial Summary Judgment on the issue of whether the interpretation of an insurance policy issued in Louisiana, delivered in Louisiana, and sold to a Louisiana resident is subject to ERISA guidelines or Louisiana substantive law. Plaintiff contends that in a suit on a life or accident insurance policy, where the defense is that the deceased committed suicide, there is but one issue to be resolved: whether the facts and circumstances proved exclude with reasonable certainty and hypothesis of death by any other means.

Plaintiff argues that with regard to the issues of policy interpretation and award benefits, LINA should be held to the burden of proof placed upon them by Louisiana jurisprudence as to whether it has been provided with sufficient evidence to exclude all other reasonable conclusions regarding the manner of death. Plaintiff insists that excluding the presumption against suicide simply because the policy is employer sponsored would turn Congress' reasons for enacting ERISA on its head by allowing the insurance company to proclaim suicide on its face without so much as an inquiry into other possible manners of death.

Plaintiff cites *Miles v. AIG Life Insurance Co., 2005 WL 1038668 (E.D. La.)*, where the Court pointed out that the Fifth Circuit has never held that the state law legal presumption against suicide applied in the ERISA context. The Court in *Miles* found the legal presumption against

suicide inapplicable under the facts of the case. The Court ultimately concluded that because Mrs. Miles did not dispute that Mr. Miles "purposefully took his own life" only his state of mind was at issue. As such, the presumption against suicide did not apply.

Plaintiff argues that the facts of the instant matter can be distinguished from the facts of Miles in that the main issue is whether Mrs. Smith voluntarily ingested medications with the intent to end her life. Plaintiff's provide that Mrs. Smith was awaiting a visit from her grandson and wrote a "to-do" list of things she intended to accomplish in the next week shortly before she died.

Plaintiff has submitted the opinion of Dr. Troy Martin, Mrs. Smith's primary care physician who states that she was not suicidal. Also, Plaintiff has submitted the report of Dr. Joseph Manno, forensic toxicologist who opined that Mrs. Smith's overdose was not a conscious or voluntary choice by an action taken by a woman who had no ability to make conscious or voluntary choices, but an action taken by a woman who had no ability to make conscious decisions due to drugs such as Ambien found in her system. Dr. Manno's report states that the co-ingestion of the drugs found in Mrs. Smith was known to induce a syndrome that leads to unintentional overdose. He also stated that Mrs. Smith's ingestion of hydrocodone and meperdine could have also been the result of a recurring bladder spasm or her imagination (hallucination) that she experienced the pain. Plaintiff argues that all of the aforementioned evidence leaves suicide in doubt as the cause of death of Mrs. Smith. Thus, the burden shifts to LINA to exclude all other manners of death except suicide in order for the suicide defense to apply.

C.  **Defendant's Contentions**

LINA argues that the denial of Mrs. Smith's benefits was not based on the suicide

exclusion and that it was in fact based on the following exclusions:

1. Voluntary ingestion of drugs unless prescribed by a physician;

2. Losses resulting from sickness, disease, bodily infirmity, or treatment thereof.

The Defendant insists that because the final benefit determination was not based on the suicide exclusion, the presumption is entirely irrelevant and will not change the result. Defendant also argues that even if the presumption was theoretically relevant, it is preempted by ERISA as a matter of law. Thus, it is of no force or effect. Also, Defendant insists that there is nothing in the Policy incorporating or implicating any aspect of Louisiana law, including the presumption. Therefore, application of the presumption would constitute impermissible modification of policy terms.

LINA retained Dr. Scott Denton, a forensic pathologist, who opined that Mrs. Smith's toxicology report indicated an acute, large, recent ingestion of medication consistent with the time period after her husband left for work. He also concluded that Mrs. Smith would have understood the consequences of taking the numerous amounts of the different pills, and noted that Mrs. Smith had even sought out for additional consumption medications that she had not been recently prescribed. Dr. Denton further reported that there was no evidence that hypnotic effects of the drugs ingested by Mrs. Smith can cause a massive self-inflicted acute ingestion of so many medication and pills.

Dr. Frederick Fochtman, Defendant's toxicologist, concluded that the levels of hydrocodone and zolpidem in Mrs. Smith's blood were more than ten times maximum therapeutic levels. He also stated that the concentrations of hydrocodone and merperidine in Mrs. Smith's blood were independently-lethal levels, and that the other drugs in her system would

have had an additive effect. LINA submits that based on the opinions of Dr. Denton, Dr. Fochtman, and Dr. Manno, it determined that the accidental death benefits were not payable based on the aforementioned exclusions.

Defendant also contends that the Presumption should not apply because the Policy was issued by LINA, in Pennsylvania, to Halliburton Energy Services, in Texas. Thus, the Louisiana presumption against suicide cannot apply because the insurance policy is governed by Texas law, the state of issue. Defendant argues that the only apparent connection between the Texas Policy and Louisiana is that it happened to insure some Louisiana employees. Thus, defendant insists that, assuming *arguendo*, LINA's final benefit determination had been based on the suicide exclusion, there is no basis for the application of the Louisiana Presumption to the Texas Policy.

**D.     Law and Analysis**

A summary judgment motion is properly granted when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. V. Catrell*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is often especially appropriate in cases where the remaining unresolved disputes are primarily legal, rather than factual in nature. *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). The central legal issue concerning these summary judgment motions is whether Louisiana's presumption against suicide is applicable in this case and whether ERISA preempts that presumption.

It is clear from the record that this insurance policy is governed by Texas law. The insurance policy specifically states that, "The laws of the State of Issue shown above govern this Policy." The State of Issue listed on the policy is Texas. While defendants argue that the

Louisiana Presumption is inapplicable because Texas law applies, Texas in fact has the same Presumption against Suicide as Louisiana. In *Price v. American National Insurance Company*, 113 S.W.3d 424 (2003), the 1st District Court of Appeals provided, "There is a legal presumption against suicide, which, once rebutted, does not have weight as evidence. The presumption places the burden of producing conclusive evidence showing suicide on the insurance company." Thus, Texas' presumption against suicide is identical to that of Lousiana's.

Louisiana's presumption against suicide has a long history and is well settled law in this State. *In Canal-Commercial BK. v. Employer's Liability Assurance Corp.*, 99 So. 542, 155 La. 720 (1924), the Louisiana Supreme Court opined:

> "While in an action on an accident policy the burden is on the plaintiff to show that death was caused by accident, yet where it is doubtful from the evidence whether death was caused by an accident or by suicide, a presumption arises that an accident, and not suicide, was the cause of the death."

In order to avoid liability on a policy issued by it, if an insurance company relied on the defense that the insured committed suicide, the burden rests on the company to establish that the insured did commit suicide to the exclusion of ever other reasonable hypothesis. *Kohlman v. New York Life Insurance Co.*, 151 La. 607, 92 So. 132 (1922).

In *Todd v. AIG Life Insurance Co.*, 47 F.3d 1448 (5th Cir. 1995), the Fifth Circuit held, "it is undisputed that federal law governs this issue, including the construction of the policy provisions. Congress, in adopting ERISA, expected that 'a federal common law of rights and obligations under ERISA-regulated plans would develop.' In ascertaining the applicable federal common law, this court has explained, we may 'draw guidance from analogous state law.' We must nevertheless bear in mind that, '[i]n so doing, [we] may use state common law as a basis for

new federal common law ... only to the extent that state law is not inconsistent with congressional policy concerns.'"

In the case of *Miles v. AIG Life Insurance Co.*, 2005 WL 1038668 (E.D.La), the Court noted that:

> "AIG argues that the Fifth Circuit has never held that the state law legal presumption against suicide applied in the ERISA context. Because the Court finds that legal presumption inapplicable under these facts (there was not a question in *Miles* whether the decedent committed suicide), the Court merely assumes *arguendo* that the legal presumption would apply."

Also, the Eleventh Circuit Court of Appeal in *Horton v. Reliance Standard Life Insurance Company*, 141 F. 3d 1038 (11th Cir. 1998), held that the common law presumption against suicide in favor of accidental death was part of ERISA's common law. In reaching this conclusion, the Eleventh Circuit reasoned as follows:

> Although it is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L. Ed. 2d 354 (1980), ERISA's text is silent on these presumptions. Courts have authority "to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself." *Kane v. Aetna Life Ins.*, 893 F. 2d 1283, 1285 (11th Cir. 1990). When crafting a body of common law, federal court may look to state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes.
>
> To decide whether a particular rule should become part of ERISA's common law,

the court must examine whether the rule, if adopted, would further ERISA's scheme and goals. *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986). ERISA has two central goals: (1) protection of the interests of employee benefits plans, id.; and (2) uniformity in the administration of employee benefit plans, *Smith v. Jefferson Pilot Ins. Co.*, 14 F.3d 562, 570-71 (11th Cir. 1994).

Both the negative presumption against suicide and the affirmative presumption of accidental death further ERISA's goals. The presumptions provide courts and juries with uniform rules to resolve coverage questions where the evidence of how the insured died is inconclusive. The presumptions favor the protection of the interests of beneficiaries over those of insurance companies, but this bias is not arbitrary; it is grounded in tested observations of human behavior and in American legal history.

Similar to the 11th Circuit, this Court feels that it has the discretion to decide whether Texas' presumption against suicide would be applicable in the ERISA context. Because the evidence of how the insured died is inconclusive, applying the presumption will better help the court determine whether Mrs. Smith's death was accidental or suicide. Additionally, applying the presumption will not interfere with the text of ERISA, since it is silent on these presumptions. The Insurance Policy issued to Mrs. Smith does not define "voluntary." The "voluntary ingestion of any narcotic, drug, poison, gas, or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage" can be an intentional or unintentional act.

There is a question as to whether Mrs. Smith was actually in a state of mind to know what

she was doing when she ingested these medications. Thus, whether she voluntarily and intentionally ingested these medicines over the prescribed dosage is material issue to this matter. The Court finds that this policy exclusion is vague, in that it does not specify whether the ingestion must be intentional or unintentional. Additionally, the Policy fails to define the word "voluntary." The Court also finds that to blindly enforce LINA's interpretation of "Voluntary ingestion of drugs unless prescribed by a physician" would have the effect of this Court adopting a presumption that every case of ingesting drugs, no matter the reason, is suicide. For the reasons stated, the Court finds that Texas' presumption against suicide applies in this case and it is not preempted by ERISA.

E.  **Conclusion**

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [Doc. 9] is hereby **GRANTED**. Defendant's Motion for Partial Summary Judgment [Doc.17] is hereby **DENIED**.

THUS DONE AND SIGNED this 22nd day of July, 2010 at Lafayette, Louisiana.

JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA